IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

|  |  |  |
|---|---|---|
| MIKE A. WELLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:10cv721-HEH |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE</u>

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B) on cross-motions for summary judgment.[1]  Plaintiff, Mike A. Wells, seeks

judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner

denying his applications for Social Security Disability ("DIB") and Supplemental Security

Income payments ("SSI").  The Commissioner's final decision is based on a finding by an

Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social

Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion

for summary judgment (ECF No. 8) be DENIED; that Defendant's motion for summary

---

[1] The administrative record in this case has been filed under seal, pursuant to E.D. Va.
Loc. R. 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any
personal identifiers such as Plaintiff's social security number, the names of any minor children,
dates of birth (except for year of birth), and any financial account numbers from its consideration
of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information
to only the extent necessary to properly analyze the case.  E.D. Va. Loc. R. 5, 7(C).

judgment (ECF No. 9) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed his current applications for DIB and SSI on April 10, 2007, claiming disability due to soft tissue injuries of the heel resulting from a right calcaneous fracture suffered in 2002, cervical spine impairment, lumbar spine impairment, bulging disc injury, anxiety, hypertensive cardiovascular disease/hypertension, and chronic headaches.  (R. at 9, 26-28, 98-102, 140.)  Plaintiff alleged that the disability's onset date was September 25, 2004 with a date last insured ("DLI")[2] of December 31, 2006.  (R. at 9.)  The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[3]  (R. at 9, 47-48.)  On November 17, 2008, accompanied by a non-attorney representative, Plaintiff testified before an ALJ.  (R. at 9, 20-46.)  On February 2, 2009, the ALJ denied Plaintiff's application, finding that he was not disabled under the Act where, based on his age, education, work experience and residual functional capacity, there are jobs he could perform which exist in significant numbers in the national economy.  (R. at 13-17.)  The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.  (R. at 1-5.)

---

[2] In order to qualify for SSD benefits, a claimant must be both disabled and insured.  42 U.S.C. § 423(a)(1)(A)-(C).  The parties agree that Plaintiff's DLI is December 31, 2006, thus requiring him to demonstrate that his disability, if any, began on or before that date.  (Pl.'s Br. Sup. Mot. Sum. J. ("Pl.'s Br.") at 1 n.1; Def.'s Br. Sup. Mot. Sum. J. ("Def.'s Br.") at 1.)  Accordingly, the focus of the disability onset is restricted to the narrow period from alleged onset (September 24, 2004) to the DLI (December 31, 2006).

[3] Initial and reconsideration reviews in Virginia are performed by an agency of the state government—the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services—under arrangement with the SSA.  20 C.F.R. Part 404, Subpart Q; see also § 404.1503.  Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

## II. ADMINISTRATIVE RECORD

In rendering his opinion, the ALJ considered and weighed the Plaintiff's testimony; the written opinions of his treating physicians (Drs. Shriharsh Pole and David Evans); the written opinions of state agency medical and psychological consultants (Drs. Syed Hassan, Luc Vinh, and Yvonne Evans); and the complete medical record submitted by Plaintiff.  Having reviewed the complete administrative record, the Court summarizes the relevant portions of such evidence as follows.

**A.      Plaintiff's Testimony and Exhibits**

Plaintiff testified that he last worked in 2002 in the construction industry as a carpenter, and has been unable to do so since as a result of his impairments.  (R. at 24-27.)  Specifically, Plaintiff testified that he suffers from severe pain in his right foot, lower back pain, cervical disks in his neck, and chronic headaches prevent him from doing any job, not just carpentry.  (R. at 27.)  The chronic headaches and neck pain began after a car accident in the mid-1980s.  (R.at 39-40.)  He also explained that he takes several prescription pain medications which significantly alleviate his pain.  (R. at 28.)  The prescribed medications produce no side effects except for minor drowsiness.  (R. at 34.)  Plaintiff also testified that although he was prescribed a physical therapy regimen immediately after his foot injury in 2002, he found the exercises to be too strenuous and discontinued the treatment after a couple of weeks.  (R. at 35.)

Plaintiff also testified about a number of limitations to his daily activities.  For example, he believes that he can lift only twenty (20) pounds, cannot exercise, can stand for only twenty (20) minutes, walk no more than one-hundred (100) feet, and sit for no more than thirty (30) minutes.  (R. at 29-30.)  During the course of a day Plaintiff naps for about one hour, sometimes twice a day.  (R. at 31, 42.)  If he "pushes" himself to go grocery shopping, he testified that he

would be unable to do any activities during the subsequent day.  (R. at 32.)    However, Plaintiff confirmed that in May 2006 he told one of his treating physicians that sitting erect actually alleviates his pain.  (R. at 30, 413.)

Plaintiff also testified that he is able to perform light cooking, light housework, and can "coach" his parents on how to maintain their home, though he also explained that he does not physically help them with home maintenance.  (R. at 32-33.)  Plaintiff also indicated that he reads and watches television in his free time, denied the need for reminders and problems with attention, and indicated that he could follow instructions for completion of tasks.  (R. at 209-214.)  And although he testified that he needs significant assistance with his personal care, Plaintiff had previously indicated that he required no such assistance.  (Compare R. at 34 with R. at 209-210.)

On an apparently collateral area of inquiry, Plaintiff then testified about a number of other aspects of his personal history and lifestyle.  When asked about whether he smoked at all, drank alcohol at all, or has ever found himself in trouble with the law, Plaintiff unequivocally responded "no."  (R. at 39.)  And in explaining how he lost his license to drive a car, Plaintiff explained that it was related to car accidents and "driving under influence of medication."  (R. at 25.)

Finally, in an apparent effort to clarify an anomaly in the record, the ALJ confirmed with Plaintiff that he had never served in the military.  (R. at 24.)  In a related vein, the ALJ confirmed with Plaintiff that he had not been running for exercise prior to 2006.  (R. at 29.)  Both of these facts demonstrate that the ALJ knew that certain records included in Plaintiff's medical history belonged to another individual.  (R. at 331.)

**B.     Treating Physicians Opinions**

Two treating physicians opined that, as a result of his physical and psychological limitations, Plaintiff is totally disabled.[4]  First, Dr. Shriharsh Pole ("Dr. Pole"), who has treated Plaintiff since May 24, 2006, opined that Plaintiff could sit for no more than two (2) hours during an eight (8) hour workday, and would be required to stand and move around every thirty (30) minutes.  (R. at 403.)  He further opined that Plaintiff could lift no more than ten (10) pounds and could not push, pull, kneel, bend, or stoop.  (R. at 382, 403-404.)  Dr. Pole also reported that Plaintiff's pain was frequently severe enough to interfere with concentration and attention.  (R. at 404.)  Of particular importance, Dr. Poles' records indicate that he did not believe that any medication, or other treatment regimen, could relieve Plaintiff's pain.  (R. at 489.)

A second treating physician, Dr. David Evans ("Dr. Evans"), offered an opinion concurring with that of Dr. Pole.  Dr. Evans has treated Plaintiff since September 2001, principally for anxiety, panic disorder, chronic neck pain, and chronic pain in his ankle.  (Pl.'s Br. at 4; R. at 280-96.)  In a "Medical Report for General Relief and Medicaid," completed on June 28, 2006, Dr. Evans noted his opinion that Plaintiff was completely disabled, specifically because he is "unable to stand for long periods of time."  (R. at 384-87.)  However, he offered no

---

[4] Only after the ALJ rendered his decision, Plaintiff submitted two reports from Dr. James R. Schwartz, in which he offered an opinion of Plaintiff's RFC which is essentially identical to that of Dr. Pole in that he reached the same conclusion based on the same record.  In general, a district court cannot consider evidence which was not presented to the ALJ.  Smith v. Chater, 99 F.3d 635, 538 n.5 (4th Cir. 1996) (citations omitted).  However, the district court may remand when new evidence is material, relevant, not merely cumulative, and if good cause exists for the failure to submit such evidence to the ALJ.  42 U.S.C. § 405(g); Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985).  Here, Plaintiff has made no showing that such requirements are met.  Moreover, based on its review of Dr. Schwartz's opinion, the Court considers it cumulative of those already in the record.  Accordingly, Dr. Schwartz's opinion will not be considered as a basis for remand.

specific opinion as to whether Plaintiff is able to sit for a complete eight (8) hour workday with appropriate breaks.

## C.    State Physicians' Opinions

Three state agency physicians offered written opinions different from those offered by Plaintiff's treating physicians, which the ALJ considered: Dr. Syed Hassan ("Dr. Hassan"), Dr. Luc Vinh ("Dr. Vinh"), and Dr. Yvonne Evans ("Dr. Y. Evans").[5]  After reviewing Plaintiff's complete medical records, both Drs. Hassan and Vinh opined that Plaintiff's RFC permits him to engage in light work.  (R. at 347-48, 360-61.)  In reaching this conclusion, both Dr. Hassan and Dr. Vinh emphasized Plaintiff's DLI of December 31, 2006, finding that although Plaintiff's alleged limitations might be credible, there is insufficient evidence to assess credibility prior to the DLI.  (R. at 348, 361.)  Concluding that his RFC permitted light work, they emphasized the relatively minor nature of any psychological limitations, that his hypertension was well-controlled, that he goes for walks outside in his free time, and that he helps his parents maintain their home.  (R. at 347-48, 360-61.)  They also emphasized that Plaintiff maintained a normal level of strength in his lower extremities.  (R. at 347, 360.)

---

[5] Both Dr. Hassan and Dr. Vinh made specific references to a certain medical record that clearly referred to another person, but was mistakenly included in Plaintiff's file.  (R. at 331, 347, 360.)  However, those records specifically indicated that the subject patient was a veteran of the armed forces and a frequent runner -- both facts that the ALJ clearly confirmed to be untrue with regard to Plaintiff.  (R. at 24, 29.)  Accordingly, it appears from the record that the ALJ understood that such records were not related to Plaintiff.  Moreover, the ALJ did not give controlling weight to either Dr. Hassan or Dr. Vinh's reports, and did not rely on those aspects of the medical records that might reflect the mistakenly included records.  Accordingly, it is obvious that the records had no bearing on the ALJ's decision and, therefore, their inclusion in the record constitutes harmless error.  See Shinseki v. Sanders, 556 U.S. ___, 129 S. Ct. 1696, 1706 (2009) ("[T]he party that seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted") (citations and internal quotation marks omitted).

Dr. Y. Evans offered the most detailed psychological opinion of Plaintiff in the record. According to her, there is no evidence of any treatment with a mental health professional and Plaintiff's condition does not appear to be deteriorating.  (R. at 375.)  Ultimately, her conclusion was that Plaintiff was partially credible regarding his anxiety and depression, but that his condition did not appear to constitute a "severely disabling impairment."  (R. at 375.)

**D.     Additional Records**

For the most part, the medical records are consistent with Plaintiff's alleged symptoms and medically determinable impairments.  (R. at 14.)  However, certain information in the medical record conflicts with Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms from which he suffers.  (R. at 14.)  For example, the record establishes that Plaintiff continued to work in the construction business for approximately fifteen (15) years after his headaches and neck pains allegedly commenced in 1986.  (Compare R. at 39-40 with R. at 448.)  Moreover, there is nothing in the medical records to indicate that the severity of such pain has varied since the accident in 1986.

Moreover, the records from Plaintiff's medical examinations demonstrate that he has normal neck movement, normal movement in his cervical spine and thoracic spine, and no objective evidence of other limitations in the use of his upper extremities.  (R. at 14, 336-37.)  Moreover, there is evidence that conservative treatments significantly reduce his pain, such as over-the-counter medications and occasional steroidal injections.  (R. at 317, 413, 417, 490-91.)  Another record indicates that, as of May 11, 2006, Plaintiff was able to alleviate his pain "[i]f he sits erect."  (R. at 413.)  At the same time, there are no records of any surgical treatments or inpatient treatments since 2001.  (R. at 15.)  And contrary to his testimony, the medical records indicate that as of February 2, 2006, Plaintiff had completed his prescribed physical therapy

regimen and was regularly doing physical therapy exercises at home.  (<u>Compare</u> R. at 35 <u>with</u> R. at 335-36.)

In addition, several other medical records call into question Plaintiff's testimony concerning the collateral lifestyle and personal history testimony before the ALJ.  For example, his medical records indicate that he was a habitual smoker at all times.  (R. at 258, 336, 409.) More importantly, his records establish that he was a heavy drinker of alcohol, at least prior to his DLI of December 31, 2006.  (R. at 336, 409.)  In fact, he once told a pain specialist that he consumed as many as six beers at a time as a form of self-medicating pain relief.  (R. at 336.)

While Plaintiff has denied any involvement with legal authorities, in 2003 Plaintiff twice appeared at the hospital after suffering injuries during car accidents in which he was charged with having driven under the influence of alochol.  (R. at 288, 299, 301-02.)  During the second of these incidents, he initially told medical personnel that he "fell down 13 steps," only to change his story and admit that he actually hit a stone wall in his car after police provided that version of events to hospital staff.  (R. at 299.)  And although Plaintiff unequivocally denied any trouble with the law when the ALJ inquired about the topic, in addition to the drunk driving incidents described herein, Plaintiff's medical records establish that he was once "put in jail for breaking out police car window."  (R. at 281.)[6]  During that incident, which occurred on July 15, 2004, his

---

[6] The Plaintiff's criminal history is not directly relevant to the issue of disability. However, such incidents arguably constitute substantial evidence of a residual functional capacity to "punch-out" a police car window -- far more strenuous activity than his treating physicians suggest is possible.  And while the subject incident occurred shortly before his alleged disability onset date of September 25, 2004, it occurred well after he sustained the injuries that allegedly render Plaintiff disabled.  Moreover, there is nothing in the record to suggest that his condition changed in any way between the day that he punched-out the police car window and the date of alleged disability onset.

medical records note that Plaintiff's "[j]udgment seems somewhat lacking given recent events and interactions with the police."  (R. at 281.)[7]

### III. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

### IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence.  Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'"  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589).  In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)).  The

---

[7] There is also a note in the record that Plaintiff briefly quit smoking "while in prison," which was recorded on June 24, 2005.  (R. at 277.)  However, it cannot be determined from the record exactly what sort of events led Plaintiff to serve a term in prison.

9

Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed.  Perales, 402 U.S. at 390.  While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision.  Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits.  20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177.  The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[8]  20 C.F.R. §§ 416.920(b), 404.1520(b).  If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition.  Id.  If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work

---

[8] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  20 C.F.R. § 404.1572(a).  Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized."  20 C.F.R. § 404.1572(b).  Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities.  20 C.F.R. § 404.1572(c).

activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R. § 404.1520(c).  In order to qualify as a

severe impairment that entitles one to benefits under the Act, it must cause more than a minimal

effect on one's ability to function.  20 C.F.R. § 404.1520(c).  At the third step, if the claimant has

an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result

in death, it constitutes a qualifying impairment and the analysis ends.  20 C.F.R. §§ 416.920(d),

404.1520(d).  If the impairment does not meet or equal a listed impairment, then the evaluation

proceeds to the fourth step in which the ALJ is required to determine whether the claimant can

return to his past relevant work[9] based on an assessment of the claimant's residual functional

capacity (RFC)[10] and the "physical and mental demands of work [the claimant] has done in the

past."  20 C.F.R. §§ 416.920(e), 404.1520(e).  If such work can be performed, then benefits will

not be awarded.  Id.  However, if the claimant cannot perform his past work, the burden shifts to

the Commissioner at the fifth step to show that, considering the claimant's age, education, work

experience, and RFC, the claimant is capable of performing other work that is available in

significant numbers in the national economy.  20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v.

Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5

(1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The Commissioner can carry his

---

[9] Past relevant work is defined as SGA in the past fifteen years that lasted long enough
for an individual to learn the basic job functions involved.  20 C.F.R. §§ 416.965(a),
404.1565(a).

[10] RFC is defined as "an assessment of an individual's ability to do sustained work-
related physical and mental activities in a work setting on a regular and continuing basis.  A
'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work
schedule."  SSR-96-8p.  When assessing the RFC, the adjudicator must discuss the individual's
ability to perform sustained work activities in an ordinary work setting on a regular and
continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and
describe the maximum amount of each work-related activity the individual can perform based on
the evidence available in the case record.  Id.  (footnote omitted).

burden in the final step with the testimony of a vocational expert ("VE").  When a VE is called to

testify, the ALJ's function is to pose hypothetical questions that accurately represent the

claimant's RFC based on all evidence on record and a fair description of all the claimant's

impairments so that the VE can offer testimony about any jobs existing in the national economy

that the claimant can perform.  Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).  Only when

the hypothetical posed represents *all* of the claimant's substantiated impairments will the

testimony of the VE be "relevant or helpful."  Id.  If the ALJ finds that the claimant is not

capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits.

20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V.  ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset

of his disability.  (R. at 12.)  At steps two and three, the ALJ found that Plaintiff had the severe

impairments of degenerative disc disease of the lumbar spine and post-traumatic degenerative

changes in the right ankle, but that these impairments did not meet or equal any listing in 20

C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage.  (R. at

12-13.)  The ALJ next determined that Plaintiff had the RFC to perform the full range of

sedentary work.  (R. at 13-16.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform his

past relevant work as a self-employed carpenter because such work requires medium to heavy

exertion.  (R. at 16.)  At step five, after considering Plaintiff's age, education, work experience

and RFC, the ALJ nevertheless found that there are other occupations which exist in significant

numbers in the national economy that Plaintiff could perform.  (R. at 16.)  Specifically, the ALJ

found that Plaintiff was "not disabled" pursuant to Medical-Vocational Rule 201.28.  (R. at 17.)

Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that he was not entitled to benefits.  (R. at 17.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings.  (Pl.'s Br. at 23.)  In support of his position, Plaintiff argues that: (1) the ALJ failed to properly evaluate Plaintiff's credibility; and (2) the ALJ improperly discounted the opinions of Plaintiff's treating physicians when he determined Plaintiff's RFC.  (Pl.'s Br. at 14-23.)  Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed.  (Def.'s Br. at 13-21.)  Plaintiff's argument fails because the ALJ applied the proper analytical framework for evaluating Plaintiff's credibility and properly applied the "treating physician rule."

A.      Credibility Determination of Plaintiff's Testimony

The Court begins its review with the ALJ's credibility determination because Plaintiff's own testimony provided at least some of the evidence on which the ALJ relied in rendering his RFC determination.  After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC.  20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1).  The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's *credible* complaints.

In evaluating the credibility of a claimant's subjective symptoms, the ALJ must follow a two-step analysis.  <u>Craig</u>, 76 F.3d at 594; <u>see</u> <u>also</u> SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a).  The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's

pain or other related symptoms.  Id.; SSR 96-7p, at 1-3.  The ALJ must consider all the medical

evidence in the record.  Id. at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13

(specifically stating that the "RFC assessment must be based on all of the relevant evidence in

the case record") (emphasis added).  If the underlying impairment reasonably could be expected

to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate

a claimant's statements about the intensity and persistence of the pain and the extent to which it

affects the individual's ability to work.  Id. at 595.  The ALJ's evaluation must take into account

"all the available evidence," including a credibility finding of the claimant's statements regarding

the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the

individual's statements.  Id. at 595-96; SSR 96-7p, at 5-6, 11.

        This Court must give great deference to the ALJ's credibility determinations.  See Eldeco,

Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997).  The Court of Appeals for the Fourth Circuit

(as the immediate controlling appellate authority for this Court) has determined that "[w]hen

factual findings rest upon credibility determinations, they should be accepted by the reviewing

court absent 'exceptional circumstances.'"  Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717

F.2d 141, 145 (4th Cir. 1983)).  Therefore, this Court must accept the ALJ's factual findings and

credibility determinations unless "'a credibility determination is unreasonable, contradicts other

findings of fact, or is based on an inadequate reason or no reason at all.'"  Id. (quoting NLRB v.

McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

        Furthermore, it is well established that Plaintiff's subjective allegations of pain are not,

alone, conclusive evidence that Plaintiff is disabled.  See Mickles v. Shalala, 29 F.3d 918, 919

(4th Cir. 1994).  The Fourth Circuit has determined that "subjective claims of pain must be

supported by objective medical evidence showing the existence of a medical impairment which

could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." <u>Craig</u>, 76 F.3d at 591.

Contrary to Plaintiff's argument, the ALJ expressly applied the required two-step inquiry for evaluating credibility. Indeed, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" -- thus satisfying the first prong of the analysis. (R. at 14.) However, the ALJ then evaluated Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms," finding them "not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. at 14.)

In reaching this conclusion, the ALJ found several specific statements to be noteworthy. First, he noted that the medical records contain no evidence to support Plaintiff's claim that he must take several naps each day. (R. at 14.) Also, the ALJ emphasized the fact that the Plaintiff's chronic headaches and neck pains had persisted since 1986 -- approximately sixteen years before Plaintiff stopped working. (R. at 14.) It was certainly reasonable for the ALJ to discredit the "intensity, persistence, and limiting effects" of such pain when Plaintiff had no apparent difficulty working as a carpenter under such conditions for a decade and a half-- especially in a profession requiring medium to heavy exertion. (R. at 14.)

Moreover, the ALJ emphasized that there exist conflicting medical records concerning Plaintiff's response to pain. As the ALJ noted, "such pain as he experienced responded to conservative treatment, i.e., occasional injections and over-the-counter medications." (R. at 15.) Indeed, Plaintiff's own testimony before the ALJ conflicted on this point, with him testifying at one point that his pain significantly decreases with such treatments, then subsequently indicating that the pain is too extreme to be addressed by treatment. (R. at 28.) Moreover, Plaintiff

15

admitted to the ALJ that he informed a pain specialist that sitting in an erect position actually helps alleviate his pain.  (R. at 30.)  This directly conflicts with Plaintiff's statement that his pain prohibits him from sitting more than thirty (30) minutes.  (R. at 30.)  And as the Court shall soon explain, *infra* at Section V(B), the predominant medical issue governing Plaintiff's RFC centers on his postural limitations, i.e., whether he can sit for six (6) hours during an eight (8) hour work day.  (See R. at 15.)

Though not specifically referenced by the ALJ, other segments of the record indicate that some of Plaintiff's testimony was inaccurate.  For example, his denial of any alcohol use, tobacco use, or "trouble with the law" is completely at odds with numerous references in the medical records.  (Compare R. at 39 with R. at 258, 336, 409.)  On the surface, such misrepresentations might appear to impact only Plaintiff's credibility during his testimony before the Court.  See Justice v. Astrue, 2:10cv117, 2011 U.S. Dist. LEXIS 30284, at *80-82 (S.D. W. Va. March 23, 2011) (affirming ALJ credibility determination based upon conflicting medical records and statements concerning substance abuse).  However, the particular misrepresentations in this case also affect the credibility analysis of Plaintiff's subjective limitations, both as described to the ALJ and to some of Plaintiff's medical care providers.

Two examples stand out.  First, it is expressly recorded in the record that Plaintiff misrepresented events to medical staff during an emergency room visit in October 2003.  (R. at 299.)  Initially, Plaintiff told emergency room staff that "he fell down 13 steps," resulting in his injuries.  (R. at 299.)  Only after the police informed his treating physician that Plaintiff was actually involved in a car accident did he admit the true series of events.  (R. at 299.)

Another example of Plaintiff's less than credible testimony is directly relevant to the ALJ's RFC determination.  On July 15, 2004 -- approximately two years after the onset of his

most recent injuries, and only two months before his alleged disability onset date -- Plaintiff was "put in jail for breaking out [of a] police car window."  (R. at 281.)  It would certainly have been reasonable for the ALJ to find such an incident to impact credibility where, as here, Plaintiff testified that he had never been in "trouble with the law."  (R. at 39.)  Obviously, getting caught breaking a police car window constitutes "trouble with the law."  But more significantly, the ability to break out of a police car window involves the ability to engage in strenuous physical activity, thus raising doubts about the Plaintiff's treating physicians' RFC determination.  See, e.g., Craig, 76 F.3d at 595 (citing 20 C.F.R. §§ 416.929(c)(1)-(3) and 404.1529(c)(1)-(3)) ("The second prong of the [credibility] test should consider 'not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history . . . and any other evidence relevant to the severity of the impairment, such as the claimant's daily activities. . .").  Although "breaking out" a police car window does not appear to have been a "daily activity" of the Plaintiff's, such a stark deviation from his otherwise supposedly infirm state, coupled with the other inconsistencies in the record, constitutes substantial evidence supporting the ALJ's credibility determination.

Although the ALJ could have reached a different result, there exists substantial evidence in the record supporting his credibility determination, and he followed the proper two-step analytic framework for making such a determination.  See Johnson, 434 F.3d at 653.  Accordingly, the Court recommends that the ALJ's decision be affirmed on such a basis.

**B.      Application of the Treating Physician Rule**

In finding an RFC permitting Plaintiff to engage in sedentary work, the ALJ was forced to reconcile divergent opinions offered by Plaintiff's treating physicians versus those offered by state agency physicians.  On the one hand, Plaintiff's treating physicians opined that he could not

work at all.  On the other hand, the state agency physicians opined that Plaintiff possessed an

RFC that would allow him to engage in light work.  Ultimately, the ALJ gave some weight to the

treating physician opinions, significant weight to the state agency physician opinions, but no

controlling weight to any of the offered opinions.  Instead, relying on other substantial evidence

available in the record, including Plaintiff's testimony as well as the medical records, the ALJ

concluded that Plaintiff possessed an RFC permitting him to engage in sedentary work.  (R. at

15.)

The ALJ's principal deviation from the treating physicians' opinion concerns the postural

limitation that Plaintiff cannot sit for more than two (2) hours in an eight hour workday.  The

ALJ also rejected the notion that Plaintiff cannot sustain an adequate level of attention and

concentration.  (R. at 15.)  Otherwise, the ALJ's RFC determination is generally the same as that

offered by Dr. Pole.  (Compare R. at 15 with R. at 382, 400-405.)  Accordingly, the Court must

determine whether the ALJ employed the proper analysis for his review of the treating physician

opinions and, by extension, whether substantial evidence supports his deviation therefrom with

regard to Plaintiff's postural limitations.

During the sequential analysis, when the ALJ determines whether the claimant has a

medically-determinable severe impairment, or combination of impairments which would

significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ

must analyze the claimant's medical records that are provided and any medical evidence

resulting from consultative examinations or medical expert evaluation that have been ordered.

See 20 C.F.R. § 416.912(f).  When the record contains a number of different medical opinions,

including those from the Plaintiff's treating physician(s), consultative examiners or other sources

18

that are consistent with each other, then the ALJ makes a determination based on that evidence.
See 20 C.F.R. § 416.927(c)(2).

　　If, however, the medical opinions are inconsistent internally with each other, or other
evidence, the ALJ must evaluate the opinions and assign them respective weight to properly
analyze the evidence involved.  20 C.F.R. § 416.927(c)(2), (d).  Under the applicable regulations
and case law, a treating physician's opinion must be given controlling weight if it is well-
supported by medically-acceptable clinical and laboratory diagnostic techniques and is not
inconsistent with other substantial evidence in the record.  Craig, 76 F.3d at 590; 20 C.F.R. §
416.927(d)(2); SSR 96-2p.  However, the regulations do not require that the ALJ accept opinions
from a treating physician in every situation, e.g., when the physician opines on the issue of
whether the claimant is disabled for purposes of employment (an issue reserved for the
Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is
not otherwise well supported.  Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at
*4 (W.D. Va. Apr. 26, 2005).  See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

　　As Plaintiff has noted, the ALJ is required to consider the following when evaluating a
treating physician's opinions: (1) the length of the treating physician relationship and frequency
of examination; (2) the nature and extent of the treatment relationship; (3) Supportability based
upon the medical record; (4) consistency between the opinion and the medical record; (5) any
specialization on the part of the treating physician; and (6) any other relevant factors.  20 C.F.R.
§§ 404.1527(d)(2)-(6).  However, those same regulations specifically vest the ALJ -- not the
treating physicians -- with authority to determine whether a claimant is disabled as that term is
defined by statute.  20 C.F.R. § 404.1527(e)(1).  Based on the Court's review of the ALJ's

opinion, it appears that he did, in fact, engage in the required analysis and applied the appropriate regulations, even if he did not specifically cite each and every regulatory section.

The ALJ accepted the treating physician opinions in all respects except for two: (1) Plaintiff's postural limitations; and (2) Plaintiff's attention and concentration deficits.  (R. at 15.) Although not specifically identified by citation, the ALJ applied factors 3 and 4 of those listed at 20 C.F.R. §§ 404.1527(d)(2)-(6) in order to reach this conclusion.  Specifically, he emphasized the medical records that *did not* support those particular conclusions, as well as those medical records that conflicted with the opinions.

For example, contrary to the opinions of Drs. Pole and Evans, there was evidence that Plaintiff's pain was significantly reduced by both over-the-counter medications and steroidal injections.  (R. at 28, 317, 413, 417, 490-91.)  And of particular significance, since Plaintiff's postural limitations were critical in the analysis, the treating physician opinions cannot be reconciled with the testimony and medical records indicating that Plaintiff can alleviate his pain "[i]f he sits erect."  (R. at 30, 413.)  Moreover, neither treating physician acknowledged that Plaintiff worked for nearly fifteen (15) years before he allegedly became incapable of employment with the same headaches and neck pains that resulted from his 1986 car accident. (R. at 39-40, 448.)  These well-documented facts alone constitute substantial evidence supporting the ALJ's decision to give some, but not controlling, weight to the treating physician opinions.  Jarrells, 2005 WL 1000255, at *4.  See 20 C.F.R. § 404.1527(d)(3)-(4), (e).  And of course, neither treating physician opinion can be reconciled with Plaintiff's apparent ability to "break out" a police car window.  (R. at 281.)

On the issue of concentration and attention, Plaintiff himself completed a disability questionnaire in which he denied the need for reminders and problems with attention, indicating

that he could follow instructions for the completion of tasks. (R. at 209-214.)  In the same questionnaire, Plaintiff indicated that he requires no assistance with his personal care. (R. at 109-210.)  Moreover, the sole mental health expert opinion offered in this case was that of Dr. Y. Evans, a state agency psychologist.  As this Court has consistently recognized in the past, "[d]espite Plaintiff's contentions that the state agency physicians should be given 'no substantial weight,' the ALJ was required to consider their opinions to the extent they were not inconsistent with the evidence in the record." Rives v. Astrue, No. 3:09cv539, 2010 WL 2928242, at *1 (E.D. Va. July 22, 2010).  In rendering her opinion, Dr. Y. Evans correctly noted that there is no evidence that Plaintiff has been treated by any mental health professional and his condition does not appear to be worsening. (R. at 375.)  Such facts, coupled with Dr. Y Evans's opinion that Plaintiff's psychological condition is not a "severely disabling impairment," and Plaintiff's own questionnaire responses, constitutes substantial evidence in favor of the ALJ's treating physician analysis.

Based on the record before the Court, it is clear that substantial evidence supported the ALJ's decision not to afford controlling weight to the opinions of Plaintiff's treating physicians on the issues of postural limitations and concentration or attention.

## VI. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (ECF No. 8) be DENIED; that Defendant's motion for summary judgment (ECF No. 9) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Henry E. Hudson and to all counsel of record.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Richmond, Virginia
Dated: January 9, 2012